**R. GIBSON PAGTER, JR.**, CA SBN 116450
**MISTY PERRY ISAACSON,** CA SBN 193204
**PAGTER AND MILLER**
525 N. Cabrillo Park Drive, Suite 104
Santa Ana, CA 92701
Telephone: (714) 541-6072
Facsimile:  (714) 541-6897
Email: gibson@pagterandmiller.com
Email: misty@pagterandmiller.com

Attorneys for Plaintiff, American
Contractors Indemnity Co.

## IN THE UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>ANDRE HAGHVERDIAN,<br><br>　　　　　Debtor.<br>_____<br><br>AMERICAN CONTRACTORS INDEMNITY<br>COMPANY,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ANDRE HAGHVERDIAN,<br><br>　　　　　Defendant.<br>_____ | Case No. 2:12-bk-50541-PC<br><br>Adv. No. 2:13-ap-01363-PC<br><br>Chapter 7<br><br>PLAINTIFF'S TRIAL BRIEF IN SUPPORT OF<br>COMPLAINT OBJECTING TO DISCHARGE<br>PURSUANT TO 11 U.S.C. § 727(a)(2), (a)(3),<br>(a)(4), (a)(5), and (a)(6)<br><br>**TRIAL**<br><br>DATE:  April 4, 2014<br>TIME:   9:00 a.m.<br>CTRM:  1468<br>PLACE: 255 E. Temple St., Los Angeles, CA |

American Contractors Indemnity Company ("ACIC" or "Plaintiff") submits the following

Trial Brief in support of their Complaint Objecting to the Discharge of Debtor, Andre

Haghverdian ("Debtor" or "Defendant") pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), (a)(5),

and (a)(6).

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

- 1 -

## Table of Contents

I.    BRIEF STATEMENT OF FACTS ................................................................. 5

II.   LEGAL DISCUSSION ........................................................................... 6

   A.   The Debtor's Discharge Should be Denied because he Concealed and/or Transferred his Property within One Year of the Petition Date with the Intent to Hinder, Delay, or Defraud his Creditors or the Trustee [727(a)(2)(A)] ....................................................... 7

   B.   The Debtor's Discharge Should be Denied because he Concealed and/or Transferred Property of the Estate with the Intent to Hinder, Delay, or Defraud his Creditors or the Trustee [727(a)(2)(B)] ....................................................................... 9

   C.   The Debtor's Discharge Should be Denied because he Concealed and/or Failed to Keep or Preserve any Recorded Information, including Books, Documents, Records, and Papers, from which his Financial Condition or Business Transactions Might be Ascertained and Failed to Comply with the Court's Order to Produce the Same [727(a)(3); 727(a)(6)] ............................................................... 11

   D.   The Debtor's Discharge Should be Denied because he Knowingly and Fraudulently Made False Oaths or Accounts in His Bankruptcy Documents [727(a)(4)] ................... 15

      1.  *False Oaths or Accounts* ................................................................ 15

      2.  *Material False Oaths* .................................................................... 16

      3.  *Requisite Intent* ........................................................................ 17

   E.   The Debtor's Discharge Should be Denied because he has Failed to Explain Satisfactorily any Loss of Assets or Deficiency of Assets to Meet his Liabilities [727(a)(5)] ...................................................................................... 21

III.  CONCLUSION ................................................................................ 21

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

# Table of Authorities

**CASES**

*Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279 (9th Cir. 1996) .......................................................... 7, 21

*Boroff v. Tully (In re Tully)*, 818 F.2d 106 (1st Cir. 1987).......................................................................... 17

*Burchett v. Myers,* 202 F.2d 920 (9th Cir.1953) ....................................................................................... 11

*Cadlerock Joint Venture, L.P. v. Cacioli (In re Cacioli)*, 285 B.R. 778 (Bankr.D.Conn.2002) ................. 11

*First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339 (9th Cir. 1986) ................................................. 7

*Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58 (9th Cir. BAP1999) ............................... 15

*Grogan v. Garner*, 498 U.S. 279 (1991)....................................................................................................... 6

*Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237 (9th Cir. 1997) ............................................................. 7

*In re Bailey*, 145 B.R. 919 (Bankr.N.D.Ill.1992)............................................................................ 11, 16, 17

*In re Bourget*, 176 B.R. 25 (Bankr. C.D. Cal. 1994) ................................................................................. 11

*In re Caneva*, 550 F.3d 755 (9th Cir. 2008)............................................................................................... 12

*In re Connors*, 273 B.R. 764 (S.D.Ill.2001) ............................................................................................... 12

*In re Coombs*, 193 B.R. 557 (Bankr.S.D.Cal.1996).................................................................................. 17

*In re Devers*, 759 F.2d 751 (9th Cir. 1985) ............................................................................................... 21

*In re Hoblitzell*, 223 B.R. 211 (Bankr. E.D. Cal. 1998) ....................................................................... 15, 16

*In re Juzwiak*, 89 F.3d 424 (7th Cir.1996)................................................................................................. 12

*In re Kauffman*, 675 F.2d 127 (7th Cir.1981).............................................................................................. 8

*In re Kinney*, 33 B.R. 594 (Bankr.N.D.Ohio 1983) ................................................................................... 11

*In re Lawson*, 122 F.3d 1237 (9th Cir. 1997)............................................................................................... 8

*In re Olivier*, 819 F.2d 550 (5th Cir.1987) ................................................................................................... 8

*In re Rosen*, 996 F.2d 1527 (3d Cir.1993) .................................................................................................. 8

*In re Scott*, 172 F.3d 959 (7th Cir.1999)................................................................................................... 12

*Khalil v. Developers Surety and Indemnity (In re Khalil)*, 578 F.3d. 1167 (9th Cir. 2009) ............... 16, 17, 18

*Khalil v. Developers Surety and Indemnity Company*, 379 B.R. 163 (9th Cir. BAP 2007) ......................... 16

*La Vangie v. Mazzola (In re Mazzola)* 4 B.R. 179 (Bankr. D. Mass. 1980) ................................................ 17

*Lansdowne v. Cox (In re Cox)*, 41 B.R. 1294 (9th Cir.1994) ..................................................................... 11

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

*Local Loan Co. v. Hunt,* 292 U.S. 234 (1934) .................................................................................. 6

*Meridian Bank v. Alten,* 958 F.2d 1226 (3d Cir.1992)................................................................... 12

*Olympic Coast Invest., Inc. v. Wright (In re Wright),* 364 B.R. 51 (Bankr.D.Mont.2007) ............................................. 21

*Retz v. Samson (In re Retz),* 606 F.3d 1189 (9th Cir. 2010)................................................ 17, 21

*Rhoades v. Wikle,* 453 F.2d 51 (9th Cir.1971) .............................................................................. 11

*Roberts v. Erhard (In re Roberts),* 331 B.R. 876 (9th Cir. BAP 2005) ................................. 15-16

*Samson v. Retz (In re Retz),* 606 F.3d 1189 (9th Cir. 2010)................................................... 7, 15

*Searles v. Riley (In re Searles),* 317 B.R. 368 (9th Cir. BAP 2004) ........................................... 16

**STATUTES**

11 U.S.C. § 101(54) ......................................................................................................................... 7

11 U.S.C. § 727(a)(2) .............................................................................................................. 6, 7, 10

11 U.S.C. § 727(a)(3) ............................................................................................................ 11,12,13

11 U.S.C. § 727(a)(4).......................................................................................................... 15,16, 17

11 U.S.C. § 727(a)(5) ..................................................................................................................... 21

11 U.S.C. § 727(a)(6) ..................................................................................................................... 11

**OTHER AUTHORITIES**

S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978) .......................................................................... 7

**TREATISES**

Collier ¶ 727.04[1][a] .................................................................................................................... 17

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

## I.    **BRIEF STATEMENT OF FACTS**

1.    The Plaintiff issued certain construction bonds (collectively "Bonds") for the Defendant's company, the Pivot Group, Inc ("Pivot").  The Defendant personally guaranteed these Bonds.  As the surety issuing the construction bonds, ACIC was called to and did pay bond claimants in excess of $750,000.  To date, neither Pivot nor Defendant have reimbursed ACIC for the payment of such Bonds.

2.    On July 19, 2011, ACIC filed a complaint in the Superior Court of the State of California, County of Los Angeles against the Defendant; his wife Ivet Nazari ("Nazari"); Pivot; and Allied Construction Experts, Inc. ("Allied") seeking damages in excess of $754,300.45 for Breach of Written Contract, Statutory Indemnity, Contractual Indemnity, Common Counts, Specific Performance, and Declaratory Relief, Case No. BC465774 ("LASC Case").

3.    Three days thereafter, on July 22, 2011, the Defendant caused a Family Law Summons and Petition for Legal Separation ("Separation Petition") against Nazari to be filed in the Superior Court of the State of California, County of Los Angeles, Case No. ED044382 ("Family Law Case").  [Plaintiff's Exhibit 26].

4.    On July 26, 2011, one week after the LASC Case was filed, Defendant filed a Chapter 13 Bankruptcy Case, Case No. 2:11-bk-41760-ER ("2011 BK Case").  Plaintiff and the Chapter 13 Trustee filed objections to Defendant's Chapter 13 Plan and on January 9, 2012, Defendant converted his case to Chapter 7.  [Plaintiff's Exhibit 2].

5.    On April 12, 2012, Plaintiff filed a Motion to Dismiss Defendant's Chapter 7 case pursuant to 11 U.S.C. § 707(b)(2) [presumption of abuse] and (b)(3) [totality of circumstances and bad faith].  On June 26, 2012, the Court dismissed the Defendant's case finding that the presumption of abuse arose pursuant to 11 U.S.C. §707(b)(2).

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

- 5 -

6.      On June 26, 2012, the Court entered its Order granting ACIC's Motion to Dismiss, finding that the Debtor: failed to provide any evidence to support his monthly expense for public transportation; failed to provide sufficient evidence of a "contribution" to his alleged estranged family; failed to provide sufficient evidence of a monthly childcare expense; and that the presumption of abuse existed pursuant to 11 U.S.C. § 707(b)(2)(A)(i) and the Debtor failed to present evidence of any special circumstance within the meaning of 11 U.S.C. §707(b)(2)(B) to rebut the presumption.

7.      Approximately five (5) months after the Defendant's 2011 BK Case was dismissed as an abusive filing, Defendant filed the instant Chapter 7 petition on December 10, 2012.  [Plaintiff's Exhibit 15].

8.      On or about December 17, 2012, Nazari filed her voluntary Chapter 7 petition, Case No. 2:12-bk-51061-TD ("Nazari BK").  [Plaintiff's Exhibit 22].

## II.    **LEGAL DISCUSSION**

The Supreme Court has acknowledged that a central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244 (1934). However, within this "fresh start" policy, the Supreme Court has been careful to explain that the Code limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor." *Ibid.  Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

///

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

**A.** **_The Debtor's Discharge Should be Denied because he Concealed and/or Transferred his Property within One Year of the Petition Date with the Intent to Hinder, Delay, or Defraud his Creditors or the Trustee [727(a)(2)(A)]_**

A party seeking denial of discharge under § 727(a)(2) must prove: "(1) a disposition of property, such as a transfer or concealment, and (2) a subjective intent on the debtor's part to hinder delay, or defraud a creditor through the act [of] disposing of the property." *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997). The Debtor's intent need not be fraudulent to meet the requirements of §727(a)(2). *Samson v. Retz (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010). Since the language of §727(a)(2) is disjunctive it is sufficient if the Debtor's intent is to hinder or delay a creditor. *Id.* (quoting *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996). Additionally, "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *In re Bernard 96 F.3d at 1281-82 (quoting First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986).

Bankruptcy Code's definition of "transfer," which is *extremely* broad:

> "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption....

11 U.S.C. § 101(54). The legislative history of this definition confirms its breadth:

> A transfer is a disposition of an interest in property. The definition of transfer is as broad as possible. Many of the potentially limiting words in current law are deleted, and the language is simplified. Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property. *A deposit in a bank account or similar account is a transfer.*

S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5813 (emphasis added). *In re Bernard*, 96 F.3d at 1279, 1282.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Under the "continuing concealment" doctrine, a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing. *See In re Olivier,* 819 F.2d 550, 555 (5th Cir.1987) (citing and discussing cases). In *Olivier,* debtor spouses-when faced with liability in a serious personal injury lawsuit-transferred title in their home to the wife's mother and properly recorded the transfer seven years prior to filing their petition. *Id* at 551. Debtors continued to live in and maintain the property up to filing their petition. *Id.* The bankruptcy court found that the debtors retained a secret beneficial interest in the legally-transferred property and therefore that they continued to conceal the property interest from creditors within the year prior to the filing of the petition. *Id.* at 553. The bankruptcy court reasoned that, where evidence demonstrates that the debtor retained a secret interest that could be realized by her creditors, despite an ostensible transfer of property, such a sham transaction suffices to deny her a discharge. *Id.* at 555.

The logic and rationale behind the "continuing concealment" doctrine as explained in *Olivier* was compelling and the Ninth Circuit BAP adopted the doctrine as the law of the Ninth Circuit in *In re Lawson,* 122 F.3d 1237, 1240-41 (9th Cir. 1997). *See also Rosen,* 996 F.2d 1527 (3d Cir.1993) (adopting doctrine of continuing concealment); *In re Kauffman,* 675 F.2d 127 (7th Cir.1981) (same).

In the within case, the Debtor has either transferred or concealed his interests in certain personal property assets, including but not limited to jewelry and antiques. The Debtor's Schedule B lists the value of his interest in "Household goods and furnishings, including audio, video, and computer equipment" in the amount of $1,800 and "Furs and jewelry" in the amount of $500. [Plaintiff's Exhibit 15, page 13]. The Debtor has further testified that the aforementioned amounts were the combined value of he and Nazari's community property

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

- 8 -

assets.  However, Nazari's Schedule B lists the value of her interest in "Household goods and furnishings, including audio, video, and computer equipment" in the amount of $1,600 and "Furs and jewelry" in the amount of $1,100.  [Plaintiff's Exhibit 22, page 13].  Nazari further testified that amounts listed in her Schedule B were the value of the community assets. [Plaintiff's Exhibit 55, pages 71-73].

The Debtor further discloses on his Schedule B that he has an interest in "Books, photos and a camera" in the amount of $1,000 and further testified that the amount was the combined value of the community property of he and Nazari.  However, Nazari has marked NONE in response to the request to disclose the description and value of her interest in any "Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles."  Neither the Debtor nor Nazari disclosed in their Statement of Financial Affairs any "other property . . . transferred either absolutely or as security within **two** years immediately preceding the commencement of this case."  [Plaintiff's Exhibit 15, pages 13 & 30; and Exhibit 22, pages 13 & 30].

The Plaintiff submits that the Debtor's statements are false and that it will prove at trial that the Debtor, with intent to hinder delay, or defraud his creditors or the Trustee, transferred, removed, destroyed, mutilated, or concealed property, or has permitted the same to occur within one year before the Petition Date.

**B.**    ***The Debtor's Discharge Should be Denied because he Concealed and/or Transferred Property of the Estate with the Intent to Hinder, Delay, or Defraud his Creditors or the Trustee [727(a)(2)(B)]***

Both the Debtor and Nazari disclose on their respective Schedule B forms that they hold an interest in a 2003 Toyota Corolla ("Corolla") valued at $2,000.  [Plaintiff's Exhibit 15, page 15; Exhibit 22, page 15].  Since the Debtor's bankruptcy was filed [12/10/12] prior to Nazari's

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Case [12/17/12], the Corolla remains a current asset of the Debtor's estate and has not been abandoned, either technically or by order of the Court.

Although still property of the Debtor's bankruptcy estate, in or about April 2013 the Debtor transferred or caused to be transferred the Corolla and received $4,500 for the same. At the Nazari's deposition held on August 14, 2013, Nazari testified as follows:

> Isaacson  Q:   The three other vehicles, are they operable?
> Nazari    A:   They are.  I've sold the Toyota Corolla.
> Isaacson  Q:   And when was that?
> Nazari    A:   In April 2013.

[Plaintiff's Exhibit 55, page 56, lines 1-25].

She went on to further testify:

> Isaacson  Q:   I don't know what that is.
> Nazari    A:   That's the Toyota Corolla also.  I sold to those people.
> Isaacson  Q:   Okay.
> Nazari    A:   And the XPress leasing and sale company.
> Isaacson  Q:   So the last page of the documents identified as number 3
>                provided by Ms. Nazari is a check in the amount of $4,500
>                for the Toyota Corolla, and that's dated April 17, 2013.

[Plaintiff's Exhibit 55, pages 69-70].

In addition to the post petition sale of property of the estate, the Debtor concealed his receipt of non-exempt sale proceeds.  The Debtor's Schedule B listed the value of the Corolla as $2,000 and his Schedule C exempted $2,000 in the same.  Accordingly the Debtor has concealed and/or has used or allowed to be used for his family's personal benefit, non-exempt proceeds in the amount of $2,500.  [Plaintiff's Exhibit 15, page 16].

The Plaintiff submits that the Debtor's pre and post petition concealments were made with the intent to hinder delay, or defraud his creditors or the Trustee and as such his discharge should be denied pursuant to § 727(a)(2).

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

**C.**    ***The Debtor's Discharge Should be Denied because he Concealed and/or Failed to Keep or Preserve any Recorded Information, including Books, Documents, Records, and Papers, from which his Financial Condition or Business Transactions Might be Ascertained and Failed to Comply with the Court's Order to Produce the Same [727(a)(3); 727(a)(6)]***

The purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs. *Lansdowne v. Cox (In re Cox),* 41 F.3d 1294, 1296 (9th Cir.1994). The disclosure requirement removes the risk to creditors of "the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records." *Burchett v. Myers,* 202 F.2d 920, 926 (9th Cir.1953). While the statute does not require absolute completeness in making or keeping records, the debtor must "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *Rhoades v. Wikle,* 453 F.2d 51, 53 (9th Cir.1971). Intent to defraud is not an element of a 727(a)(3) objection to discharge. *In re Bourget*, 176 B.R. 25, 28 (Bankr. C.D. Cal. 1994) citing *In re Bailey,* 145 B.R. 919, 924 (Bankr.N.D.Ill.1992); *In re Kinney,* 33 B.R. 594, 596 (Bankr.N.D.Ohio 1983).

The first portion of §727(a)(3) addresses questions of concealment, destruction and falsification of recorded information. Concealment, for purposes of §727(a)(3), "involves a deliberate attempt to shield recorded information from detection and/or inspection." *Cadlerock Joint Venture, L.P. v. Cacioli (In re Cacioli),* 285 B.R. 778, 782 (Bankr.D.Conn.2002).

The second portion of §727(a)(3), concerns whether a debtor "failed to keep" adequate records. *In re Cox,* 41 F.3d at 1294. A creditor states a prima facie case under § 727(a)(3) by showing "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Cox,* 41 F.3d at 1296 (quoting *Meridian Bank v. Alten,* 958 F.2d 1226,

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

1232 (3d Cir.1992)). After showing inadequate or nonexistent records, "the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records." *Id.* (citations omitted).  *See also*, *In re Caneva*, 550 F.3d 755, 761 (9th Cir. 2008).

In addition to the discussion in *Cox,* the function of §727(a)(3) has been explained in this fashion:

> It is important to recognize, however, that a discharge in bankruptcy is a privilege, not a right and should only inure to the benefit of the honest debtor. *In re Juzwiak,* 89 F.3d [424,] 427 [ (7th Cir.1996) ]. Accordingly, the privilege of discharge is necessarily dependent on a true presentation of the debtor's financial affairs. *In re Scott,* 172 F.3d [959,] 969 [ (7th Cir.1999) ].
> ...

> In other words, 11 U.S.C. § 727(a)(3) requires *as a precondition to discharge* that the debtor produce records which provide creditors "with enough financial information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *In re Juzwiak,* 89 F.3d at 427.

> Because courts and creditors should not be forced to undertake an independent investigation of the debtor's affairs, speculate as to the financial history or condition of the debtor, or sift through documents in order to attempt to reconstruct the flow of the debtor's assets, they have a right to be supplied with dependable information on which they can rely in tracing a debtor's financial history. *Id.* at 429. Therefore the debtor's duty under 11 U.S.C. §727(a)(3) does not merely require that the debtor turn over any records he has. *In re Scott,* 172 F.3d at 969. Rather, this language places *an affirmative duty* on the debtor to create books and records which accurately document the debtor's business affairs. *Id.* "In the absence of §727(a)(3), debtors without proper books and records could obtain a discharge while frustrating the trustee's ability to liquidate pre-petition assets to satisfy pre-petition debts." *Id.*

*In re Connors,* 273 B.R. 764, 769–770 (S.D.Ill.2001).

In the within case, the Stipulation for Examination and Production of Documents under Bankruptcy Rule 2004 and Order thereon [Plaintiff's Exhibit 19], required the Debtor to produce documents related to his finances.  Specifically, ACIC asked the Debtor to produce:

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

- 12 -

1.     Any and all statements, bank books, cancelled checks and deposit receipts for all checking, savings or other financial accounts held in his name, Nazari's name and all accounts which the Debtor had a right to make withdrawals and/or write checks from January 1, 2012 to the present.

The Debtor failed to produce any such documents.  But for the efforts of the Plaintiff and its subpoena requesting that CitiBank and JP Morgan Chase produce copies of such bank records, the Plaintiff would not have had the opportunity to review and examine the Debtor's bank records.  The Plaintiff submits that the Debtor's failure to produce appropriate financial records is what is specifically contemplated by § 727(a)(3), which makes discharge dependent on the debtor's true presentation of his financial affairs. [See Plaintiff's Exhibits 47-54 for copies of bank records produced by CitiBank and JP Morgan Chase pursuant to Plaintiff's subpoena on same].

2.     All documents which mention, reflect, refer to, relate to, and/or evidence Debtor's net worth during 2010 through 2012 and the documents used in calculating the same.  Debtor produced no such documents.

3.     All documents including W-2(s) and check stubs which mention, reflect, refer to, relate to, and/or evidence Debtor's and/or his spouse's income earned from any source, including, disability, unemployment, or other government assistance over the twelve month period preceding the Petition Date.  The only documents produced by the Debtor were a EDD Notice of Unemployment Insurance Award dated August 7, 2012 and four (4) pay stubs from the City of Glendale dated December 21, 2011, January 5, 2012, January 20, 2012, and February 6, 2012.  No evidence of Nazari's income was produced by Debtor.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

- 13 -

4.      All documents reflecting the disposition of any and all property of Debtor and/or

Debtor's spouse, with a value of more than $3,000 within the year preceding the Petition Date.

No documents were produced by the Debtor.

5.      All documents which reflect, detail, and evidence any domestic support

obligation, order, and/or informal agreements owing by the Debtor to or for the benefit of his

Spouse or child within the two years preceding the Petition Date.

The Debtor produced no such documents. But for the efforts of the Plaintiff in obtaining

copies of filed documents in the Debtor's Family Law Case, the Plaintiff would not have been

made aware of the Stipulation executed pre-petition on October 30, 2012 between the Debtor

and Nazari to Establish Child Support "as calculated under the guideline is $1,376 per month."

The Plaintiff submits that the Debtor's failure to produce these documents was in direct

violation of the Court's Order requiring the production of the same.  [See Plaintiff's Exhibit 35].

6.      All documents which reflect, detail, and evidence any corporate, partnership, joint

venture, or other business ownership interest of any kind held by the Debtor and/or his Spouse

within the six (6) years preceding the filing his Petition, including but not limited to incorporation

documents, corporate bylaws, partnership agreements, shareholder certificates, and related

ownership documents.

The Debtor produced no such documents. But for the efforts of the Plaintiff in obtaining

copies of filed documents with the California Secretary of State, the Plaintiff would not have

been made aware of the Debtor and Nazari's interest in Tidy Remodelers, Inc. and HFP

Development, LLC.  The Plaintiff submits that the Debtor's failure to produce these documents

was in an attempt to conceal the entities existence and/or was in direct violation of the Court's

Order requiring the production of the same.  [See Plaintiff's Exhibits 42-45].

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

The Debtor's failure to keep records goes beyond mere inattention to detail. His failure to keep and preserve basic records such as bank statements, as well as his failure to make complete and accurate disclosure in his schedules and the statement of financial affairs, was not only unreasonable, it betrays a deliberate attempt to hinder and delay the trustee in his efforts to investigate the Debtor's financial affairs.  *See, In re Hoblitzell*, 223 B.R. 211, 216 (Bankr. E.D. Cal. 1998).

**D.    The Debtor's Discharge Should be Denied because he Knowingly and Fraudulently Made False Oaths or Accounts in His Bankruptcy Documents [727(a)(4)]**

Section 727 provides that a court must grant the debtor a discharge unless, among other things, the debtor knowingly and fraudulently makes a false oath or account in the bankruptcy case or in connection with the case. 11 U.S.C. § 727(a)(4)(A). It is well established that a fundamental purpose of § 727(a)(4)(A) is to incentivize a debtor to provide the trustee and creditors with accurate information so that they do not need to conduct costly investigations. *Fogal Legware of Switz., Inc. v. Wills (In re Wills),* 243 B.R. 58, 62 (9th Cir. BAP1999) (citation omitted).

To prevail on its claim, Plaintiff must show, by a preponderance of the evidence, that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Roberts v. Erhard (In re Roberts),* 331 B.R. 876, 882 (9th Cir. BAP 2005) (citing *In re Wills,* 243 B.R. at 62). *In re Retz*, 606 F.3d 1189, 1197 (9th Cir. 2010).

### 1.  False Oaths or Accounts

A false statement or omission in a debtor's schedules or statement of financial affairs can constitute a false oath.  *Khalil v. Developers Surety And Indemnity Company*, 379 B.R. 163, 172 (9th Cir. BAP 2007) *See also, Searles v. Riley (In re Searles)*, 317 B.R. 368, 373 (9th

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Cir. BAP 2004); *Roberts v. Erhard (In re Roberts)*, 338 B.R. 876, 882 (9th Cir. BAP 2005), *aff'd*, 241 Fed.Appx. 420 (9th Cir.).  The purpose of 11 U.S.C. § 727(a)(4) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations.  *Id.* The Plaintiff can point to a number of false oaths in the Defendant's bankruptcy Schedules, SOFA, and amendments made thereto.  As identified in detail below, the Debtor has admitted to numerous false oaths and/or accounts.

### 2. Material False Oaths

Although the subject matter of Defendant's false oath must be material to warrant denial of his discharge, Collier's sets forth that if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property, it is material.  Collier ¶ 727.04[1][b]; *See also*, *Khalil* 379 B.R. at 173.  A false statement or omission may be material even if it does not cause a direct financial prejudice to creditors.  *Id.* at 177.  In the within case, the Defendant failed to disclose his bank accounts with CitiBank and JP Morgan Chase, his business dealings for at least three (3) different companies that he was involved in and/or operated, his assets, his income, and his liabilities.

Even if this Court were to conclude that his business interests and assets were worthless, it was not for the Debtor to decide which of his assets had to be disclosed. All assets must be scheduled so that "those interested in the case, in particular the trustee, have accurate information upon which they can rely without having to dig out the true facts or conduct examinations." *In re Hoblitzell*, 223 B.R. at 215-16 citing to *In re Bailey,* 147 B.R. 157, 162–163.  A disclosure's materiality is not determined by whether it may financially prejudice the estate or creditors.  An omitted asset may ultimately be found to have no value, but its disclosure is necessary "if it aids in understanding the debtor's financial affairs and

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

transactions." *Id.* citing *In re Coombs,* 193 B.R. 557, 564 (Bankr.S.D.Cal.1996).  "'Allowing

debtors the discretion to not report exempt or worthless property usurps the role of the trustee,

creditors, and the court by denying them the opportunity to review the factual and legal basis of

debtors' claims. It also permits dishonest debtors to shield questionable claims concerning an

asset's value and status as an exemption from scrutiny. Therefore, the mere fact that

unreported property is thought to be worthless or exempt is not a per se defense in a

§727(a)(4) action to bar discharge.'"  *In re Coombs*, 193 B.R. at 566 citing *In re Bailey,* 147

B.R. at 162–63.

### 3. Requisite Intent

The requisite intent required to prove a false oath, account or omission may be

discovered by an inference from the facts.  Collier ¶ 727.04[1][a].  "A reckless disregard of both

the serious nature of the information sought and the necessary attention to detail and accuracy

in answering may rise to the level of fraudulent intent necessary to bar a discharge." *Id.* citing

*La Vangie v. Mazzola (In re Mazzola)* 4 B.R. 179 (Bankr. D. Mass. 1980).  "[R]ecklessness can

be probative of fraudulent intent. . . a court 'may find the requisite intent where there has been

a pattern of falsity or from a debtor's *reckless* indifference to or disregard of the truth.'"

Fraudulent intent may be inferred from a pattern of behavior.  *Khalil v. Developers Surety &*

*Indemnity (In re Khalil)*, 578 F.3d. 1167, 1169 (9th Cir. 2009) affirming 379 BR 163 (9th Cir BAP

2007).

Additionally, the "advice of counsel is not a defense when the erroneous information

should have been evident to the debtor . . . '[a] debtor cannot, merely by playing ostrich and

burying his head deeply enough in the sand, disclaim all responsibility for statement which he

has made under oath.'"  *In re Retz*, 606 F.3d at 1199, citing to *Boroff v. Tully (In re Tully)*, 818

F.2d 106, 111 (1st Cir. 1987).

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Plaintiff submits that this Court should find that Debtor's reckless indifference to the truth is part of an attempt to make investigation difficult for the bankruptcy trustee and creditors. However, even if the Court cannot determine the Debtor's motive, the sheer number of misstatements and omissions suffice to support a finding that the Debtor knowingly and fraudulently made a false oath or account. *In re Khalil*, 379 B.R. at 176.

Plaintiff submits the below table as an illustration of the Defendant's false oaths that will be proven at trial:

| | Bankruptcy Document | File Date | Dkt No. | False Statement or Omission | Contrary Evidence Plaintiff's Exhibits # |
|---|---|---|---|---|---|
| 1. | Sch B – Question ("Q")2 | 12/10/2012 | 1 | Debtor marked "NONE" as his response to Q2 "checking, savings or other financial accounts…" | #20 Amended Schedule B Lists Checking and/or Saving Accounts -4980 and -1599 |
| | | | | | #50 – Citibank Acct No. Checking - 9275 |
| | | | | | #51 – Citibank Acct Nos. Checking -4980 & Savings -4998 |
| | | | | | #52 - Citibank Acct Nos. Checking -1599 & Savings -9275 |
| 2. | Sch B – Q8 | 12/10/2012 | 1 | Debtor marked "NONE" as his response to Q8 "firearms & sports, photographic, & other hobby equipment" | #20 Amended Schedule B lists "Children's toys" in the amount of $300 |
| 3. | Sch B – Q25 Sch G SOFA –Q5 SOFA Q10 | 12/10/2012 | 1 | Debtor did not disclose any separate or community property interest or lease obligation owing, return or transfer for a 2011 Honda | #5 Schedule B from 2011 chapter 7 discloses a 2011 Honda Lease. |
| | | | | | #53 Deposition of Ivet Nazari, page 29, lines 10-14; page 52, lines 2-7; and page 53, lines 16-17 |
| | | | | | #53 Deposition of Ivet Nazari, Exhibit 3, page 4 2011 Honda Civic Lease Monthly Statement for 12/2/2012 |
| 4. | Sch E | 12/10/2012 | 1 | Debtor marked that he did not have any domestic support obligations | #34 Stipulation establishing child support signed by Debtor and Ivet Nazari dated 10/30/2012 |

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

| # | | | | | | |
|---|---|---|---|---|---|---|
| 5. | Sch H | 12/10/2012 | 1 | | Debtor marked that he had no Codebtors | #21 Schedules D & F of Ivet Nazari's 2012 bankruptcy and |
| | | | | | | #14 Debtor's Schedules D & F filed on 12/10/2012 both list Plaintiff as a creditor in the amount of $783,231 |
| 6. | Sch I | 12/10/2012 | 1 | | Debtor indicates that his daughter is 3.5 years old | #5 Schedule B from 2011 chapter 7 lists that his daughter is 3.5 years old. |
| 7. | Sch J Q1 | 12/10/2012 | 1 | | Debtor indicates $0.00 for his monthly rent or home mortgage payment | #16 Schedule J amended to include rent in the amount of $650 |
| 8. | SOFA Q1 | 12/10/2012 | 1 | | Debtor states income from employment or operation of business is $0.00 for 2011 | #17 1st Amended SOFA filed on 12/13/2012 states income of $96,267.00 for 2011 |
| | | | | | | #53 Deposition of Ivet Nazari, Exhibit 5 (Federal Income Tax Return) |
| 9. | SOFA Q1<br>1st Amd SOFA Q1<br>2nd Amd SOFA Q1<br>3rd Amd SOFA Q1 | 12/10/2012<br>12/13/2013<br>02/22/2013<br>05/15/2013 | 1<br>11<br>20<br>25 | | Debtor failed to disclose $8,228 2011 K1 income from his S Corporation Pivot Group, Inc. | #53 Deposition of Ivet Nazari, Exhibit 5 (Federal Income Tax Return 2011) |
| 10. | SOFA Q4(a)<br>1st Amd SOFA Q4(a)<br>2nd Amd SOFA Q4(a)<br>3rd Amd SOFA Q4(a) | 12/10/2012<br>12/13/2013<br>02/22/2013<br>05/15/2013 | 1<br>11<br>20<br>25 | | Debtor failed to disclose that he was a party to a Legal Separation Petition that he filed against Ivet Nazari on July 22, 2011 | #25 Summons and Petition for Legal Separation (LASC No. ED044382) |
| 11. | SOFA Q4(b)<br>1st Amd SOFA Q4(b)<br>2nd Amd SOFA Q4(b)<br>3rd Amd SOFA Q4(b) | 12/10/2012<br>12/13/2013<br>02/22/2013<br>05/15/2013 | 1<br>11<br>20<br>25 | | Debtor failed to disclose that his Citibank Accounts were levied upon in September 2012. | #53 Deposition of Ivet Nazari, Testimony page 66, lines 10-20 |
| 12. | SOFA Q11<br>1st Amd SOFA Q11<br>2nd Amd SOFA Q11 | 12/10/2012<br>12/13/2013<br>02/22/2013 | 1<br>11<br>20 | | Debtor marked "None" in response to request to list any closed financial accounts | #49  Citibank Acct No. Checking -4988 |
| | | | | | | #20 3rd Amd SOFA filed by Debtor on 05/15/2013 |
| 13. | SOFA Q15<br>1st Amd SOFA Q15 | 12/10/2012 | 1 | | Debtor marked "None" in response to request to list any prior address within the 3 years preceding the Petition Date. | #27 Amended Petition for Legal Separation filed on 07/26/2011 |
| | | | | | | #2 Chapter 13 Voluntary Petition filed on 7/26/2011 both disclose Debtor's address as 3102 Harmony Place, La Crescenta, CA 91214 |
| 14. | SOFA Q18<br>1st Amd SOFA Q18<br>2nd Amd SOFA Q18 | 12/10/2012<br>12/13/2013<br>02/22/2013 | 1<br>11<br>20 | | Debtor failed to list his interest in Tidy Remodelers, Inc. ("Tidy") | #42 Tidy Corporate Articles |
| | | | | | | #43 Tidy Annual Corporate Filings indicates that the Debtor |

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

| | | | | | was Tidy's secretary and director |
|---|---|---|---|---|---|
| | | | | | #20 3rd Amd SOFA Q18 |
| 15. | SOFA Q18<br>1st Amd SOFA Q18<br>2nd Amd SOFA Q18 | 12/10/2012<br>12/13/2013<br>02/22/2013 | 1<br>11<br>20 | Debtor failed to list his interest in HFP Development, LLC. ("HFP") | #44 HFP Articles of Organization |
| | | | | | #45 HFP Annual Corporate Filings Indicates that the Debtor was the managing member of HFP |
| | | | | | #20 3rd Amd SOFA Q18 |
| 16. | Means Test | 12/10/2012 | 1 | Debtor discloses $0.00 as his average monthly gross wages, salary, tips, bonuses, overtime, commissions received from all sources during the six months prior to the Petition Date | #20 1st Amd Means Test filed on 05/15/2013 discloses $4,692 as Debtor's monthly gross wages, salary, tips, bonuses, overtime, commissions received from all sources during the six months prior to the petition date |
| 17. | Means Test<br>1st Amd Means Test | 12/10/2012<br>05/15/2013 | 1 | Debtor discloses $0.00 as his spouse's average monthly gross wages, salary, tips, bonuses, overtime, commissions received from all sources during the six months prior to the Petition Date | #21 Ivet Nazari's Schedule I discloses monthly gross wages of $517 per month. |
| 18. | 1st Amd Means Test | 05/15/2013 | 25 | Debtor discloses $0.00 for unemployment compensation received during the six months prior to the Petition Date | #14 Means Test disclose $1,950 for Debtor's average monthly unemployment income |
| | | | | | #14 SOFA, #17 1st Amd SOFA, #19 2nd Amd SOFA, and #20 3rd Amd SOFA Q2 indicates that the Debtor received unemployment compensation in 2012. |
| | | | | | #53 Deposition of Ivet Nazari Testimony, page 25, lines 23-25; page 26, lines 1-6; page 39, lines 20-22. Ivet testified that Debtor was laid off at the end of July 2012 and thereafter started receiving unemployment compensation. |

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

**E.** **The Debtor's Discharge Should be Denied because he has Failed to Explain Satisfactorily any Loss of Assets or Deficiency of Assets to Meet his Liabilities [727(a)(5]**

Section 727(a)(5) states: "The court shall grant the debtor a discharge, unless ... the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

Under § 727(a)(5) an objecting party bears the initial burden of proof and must demonstrate: (1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets. *Olympic Coast Invest., Inc. v. Wright (In re Wright),* 364 B.R. 51, 79(Bankr.D.Mont.2007); *see also In re Devers,* 759 F.2d at 754 (concluding that debtors could be denied discharge under § 727(a)(5) where they failed to offer a "satisfactory explanation" for the "disappearance" of a tractor they had owned that they did not produce for repossession). Once the creditor has made a prima facie case, the debtor must offer credible evidence regarding the disposition of the missing assets. *In re Devers,* 759 F.2d at 754. *In re Retz*, 606 F.3d at 1205.

In the within matter, Plaintiff will prove at trial that the Debtor has failed to explain the disposition of certain personal property assets that he previously stated to Plaintiff were in his possession.

## III.    CONCLUSION

While denial of discharge is a harsh result, bankruptcy has its roots in equity; therefore, to get equity, one must do equity. *In re Bernard*, 96 F.3d at 1283.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

### E.    The Debtor's Discharge Should be Denied because he has Failed to Explain Satisfactorily any Loss of Assets or Deficiency of Assets to Meet his Liabilities [727(a)(5]

Section 727(a)(5) states: "The court shall grant the debtor a discharge, unless ... the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

Under § 727(a)(5) an objecting party bears the initial burden of proof and must demonstrate: (1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets. *Olympic Coast Invest., Inc. v. Wright (In re Wright),* 364 B.R. 51, 79(Bankr.D.Mont.2007); *see also In re Devers,* 759 F.2d at 754 (concluding that debtors could be denied discharge under § 727(a)(5) where they failed to offer a "satisfactory explanation" for the "disappearance" of a tractor they had owned that they did not produce for repossession). Once the creditor has made a prima facie case, the debtor must offer credible evidence regarding the disposition of the missing assets. *In re Devers,* 759 F.2d at 754.  *In re Retz,* 606 F.3d at 1205.

In the within matter, Plaintiff will prove at trial that the Debtor has failed to explain the disposition of certain personal property assets that he previously stated to Plaintiff were in his possession.

### III.    CONCLUSION

While denial of discharge is a harsh result, bankruptcy has its roots in equity; therefore, to get equity, one must do equity. *In re Bernard*, 96 F.3d at 1283.  Based on the numerous false oaths, omissions, and lack of financial records produced, the Plaintiff surmises that the

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

has failed to disclose additional relevant information in his bankruptcy documents with the intent to hinder, delay, and/or defraud his creditors, the Trustee, and this Court. For the reasons set forth above and that will be proven at trial, Plaintiff has and/or will show that a denial of Defendant's discharge is warranted.

DATE: March 28, 2014

PAGTER AND MILLER

By: /s/ Misty Perry Isaacson
　　MISTY PERRY ISAACSON
　　Attorneys for Plaintiff, American
　　Contractors Indemnity Company

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**525 N. Cabrillo Park Drive, Suite 104, Santa Ana, CA  92701**

A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF'S TRIAL BRIEF IN SUPPORT OF COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), (a)(5), and (a)(6)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **03/28/2014**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Michael Jay Berger     michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com
- Andrew Edward Smyth     office@smythandsmyth.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **03/28/2014**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Hon. Peter Carroll – Judge's Copy - 255 E. Temple Street, Suite 1460, Los Angeles, CA 90012
(Overnight Delivery Via Norco Overnite; delivery scheduled for Monday 3/31/14)**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 03/28/14 | IMELDA BYNOG | /s/ *Imelda Bynog* |
|----------|--------------|---------------------|
| Date | Printed Name | Signature |

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

- 23 -