FILED & ENTERED

MAY 09 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY garcia     DEPUTY CLERK

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re:                                              )     Case No. 2:12-bk-50541-PC
                                                    )
ANDRE HAGHVERDIAN,                                  )     Adversary No. 2:13-ap-01363-PC
                                                    )
                                    Debtor.         )     Chapter 7
                                                    )
_____)
                                                    )
AMERICAN CONTRACTORS                                )     **MEMORANDUM DECISION**
INDEMNITY COMPANY,                                  )
                                                    )     Date:   April 4, 2014
                                    Plaintiff,      )     Time:   9:00 a.m.
                                                    )     Place:  United States Bankruptcy Court
v.                                                  )             Courtroom # 1468
                                                    )             255 East Temple Street
ANDRE HAGHVERDIAN,                                  )             Los Angeles, CA 90012
                                                    )
                                    Defendant.      )
_____)

American Contractors Indemnity Company ("ACIC") objects to the granting of a

discharge to Andre Haghverdian ("Debtor") pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B),

(a)(3), (a)(4), (a)(5) and (a)(6).[1]  Trial of this adversary proceeding commenced on April 4, 2014,

_____

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule"
references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable
certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local

1

and concluded on April 7, 2014.  Having considered the parties' trial stipulation, the evidentiary record and arguments of counsel, the court will enter a judgment for the Debtor based upon the following findings of fact and conclusions of law made pursuant to F.R.Civ.P. 52(a), as incorporated into FRBP 7052.

## I. <u>STATEMENT OF FACTS</u>

Prior to bankruptcy, ACIC issued certain construction bonds to Pivot Group, Inc. ("Pivot").  Debtor personally guaranteed payment of the bonds.  When Debtor defaulted on his guaranty, ACIC filed a complaint in Case No. BC465774 in the Superior Court of California, County of Los Angeles, seeking a judgment against Debtor, Debtor's estranged spouse, Ivet Nazari ("Nazari"), Pivot and Allied Construction ("Allied") for specific performance and damages for alleged breach of contract, statutory indemnity, and contractual indemnity.

<u>First Bankruptcy Case</u>

While the state court litigation was pending, Debtor and Nazari filed a chapter 7 petition <u>pro se</u> in Case No. 2:09-bk-15382-ER, <u>In re Andre Haghverdian, et ux., Debtors</u>, in the United States Bankruptcy Court, Central District of California, Los Angeles Division, on March 10, 2009.  The schedules and statements were not timely filed, and the case was dismissed on April 3, 2009.

<u>Dissolution Action</u>

On July 22, 2011, Debtor filed a Petition for Legal Separation in Case No. ED044382, <u>In the Matter of the Marriage of Andre Haghverdian and Ivet Nazari</u>, in the Superior Court of California, County of Los Angeles, stating that the parties had separated on February 1, 2011 ("Dissolution Action").  Debtor was represented by counsel in the Dissolution Action.  On May 24, 2013, a Judgment was entered confirming the legal separation of Debtor and Nazari as of May 24, 2013, and ordering Debtor to pay child support of $1,376 per month to Nazari, effective

---

Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

October 1, 2012, pursuant to a Stipulation to Establish or Modify Child Support and Order entered on May 24, 2013.

Debtor and Nazari later reconciled. On December 5, 2013, Debtor and Nazari filed a declaration in the case stating that they had reconciled and requesting that the court set aside the child support judgment entered on May 24, 2013. On February 10, 2014, the Dissolution Action was dismissed on the joint request of Debtor and Nazari.

Second Bankruptcy Case

Four days after the Dissolution Action was commenced, Debtor filed a chapter 13 petition in Case No. 2:11-bk-41760-TD, In re Andre Haghverdian, Debtor, in the United States Bankruptcy Court, Central District of California, Los Angeles Division, on July 26, 2011. On January 9, 2012, Debtor voluntarily converted the case to chapter 7. On June 26, 2012, the court dismissed the case on ACIC's motion pursuant to § 707(b)(2).

The Current Bankruptcy Case

On December 10, 2012, Debtor filed a chapter 7 petition filed in Case No. 2:12-bk-50541-PC, In re Andre Haghverdian, Debtor, in the United States Bankruptcy Court, Central District of California, Los Angeles Division, with the assistance of counsel, Elena Steers ("Steers"). In the petition, Debtor disclosed the two prior bankruptcy cases.

In the schedules filed on December 10, 2012, Debtor disclosed assets valued at $665,988 and liabilities of $2,463,029, consisting of $1,646,179 in secured claims and $816,850 in unsecured non-priority claims. ACIC, the Debtor's largest creditor, is listed in both Schedule D and F as the holder of a claim in the amount of $783,232 attributable to the "breach of a business contract." In Schedule A, Debtor disclosed a community interest in certain real property at 3102 Harmony Place, La Crescenta, CA (the "Harmony Property") valued at $592,000. According to Schedule D, the Harmony Property is encumbered by the following liens totaling $1,646,179: (1) a first lien held by Bank of America securing a mortgage debt of $564,518; (2) a second lien securing the balance of $298,429 due to CitiBank, N.A. on an equity line of credit; and (3)

3

1   ACIC's claim listed at $783,232.[2]  In Schedule B, Debtor disclosed personal property valued at

2   $73,988 which included (a) miscellaneous household goods and furniture -- $1,800; (b) books,

3   photos and a camera -- $1,000; (c) clothes -- $600; (d) jewelry -- $500; (e) a 401(k) plan --

4   $50,000; (f) a 2011 tax refund -- $14,888; and (g) an interest in the following vehicles:  (1) a

5   2003 Toyota Corolla valued at $2,000; (2) a 2000 Honda valued at $2,000; (3) a 1997 Toyota

6   Camry valued at $1,000; and (4) the lease of a 2012 Honda Accord.  Debtor's interest in the

7   Harmony Property and all personal property was claimed as exempt in Schedule C.

8          On January 10, 2013, Edward M. Wolkowitz, Chapter 7 Trustee commenced and

9   concluded the meeting of creditors and filed a Chapter 7 Trustee's Report of No Distribution.

10  Debtor completed the financial management course required for a discharge and filed the

11  certificate with the court on January 21, 2013.  But for the pendency of this adversary

12  proceeding, the case is ready to close.

13  Nazari's Chapter 7 Case

14         On December 17, 2012, Nazari filed a voluntary chapter 7 petition in Case No. 2:12-bk-

15  51061-TD, In re Ivet Nazari, Debtor.  Steers represented Nazari as well.  In her schedules, Nazari

16  disclosed assets valued at $600,200 and liabilities of $2,441,667, consisting of $1,646,178 in

17  secured claims and $795,489 in unsecured non-priority claims.  ACIC, Nazari's largest creditor,

18  is listed in both Schedule D and F as the holder of a claim in the amount of $783,231.  Nazari

19  disclosed a community interest in the Harmony Property valued at $592,000, encumbered by

20  liens totaling $1,646,178.  Nazari also disclosed personal property valued at $8,200, which

21  included (a) miscellaneous household goods and furniture -- $1,600; (b) jewelry -- $1,100; (c)

22  clothing -- $600; and (d) her interest in the following vehicles:  (1) a 2003 Toyota Corolla valued

23  at $2,000; (2) a 2000 Honda Accord valued at $1,500; (3) a 1997 Toyota Camry valued at

24  $1,000; (4) the lease of a 2011 Honda Civic; and (5) the lease of a 2012 Honda Accord.

25

26  [2]  In Schedule D, Debtor states that ACIC holds a judgment lien against the Harmony Property.
27  However, there was no evidence of a judgment or judgment lien held by ACIC introduced at
    trial.
28

4

1  Debtor's interest in the Harmony Property and all personal property was claimed as exempt in

2  Schedule C.  Shortly after conclusion of the meeting of creditors, Howard M. Ehrenberg, Chapter

3  7 Trustee filed a Chapter 7 Trustee's Report of No Distribution.  Nazari received a discharge on

4  March 25, 2013, and the case was closed on March 28, 2013.

5              ACIC's Adversary Complaint

6              On March 18, 2013, ACIC timely filed its complaint in this adversary proceeding

7  objecting to the Debtor's discharge under 11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4),

8  (a)(5) and (a)(6).  Debtor filed his answer to ACIC's complaint on April 16, 2013.  After a two-

9  day trial, the court took the matter under submission.

10                          II. DISCUSSION

11             This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

12  157(b) and 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (J) and

13  (O).  Venue is appropriate in this court.  28 U.S.C. § 1409(a).  ACIC and Debtor have expressly

14  consented to the entry of a final judgment by this court.  Objections to discharge are to be

15  literally and strictly construed against the objector and liberally construed in favor of the debtor.

16  Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1297 (9th Cir. 1986).  "Courts should deny

17  discharge only for very specific and serious infractions."  Martin Marietta Materials Southwest,

18  Inc. v. Lee (In re Lee), 309 B.R. 468, 476 (Bankr. W.D. Tex. 2004).

19             A.  Section 727(a)(2)(A)

20             Section 727(a)(2)(A) states that the court shall grant the debtor a discharge unless "the

21  debtor, with the intent to hinder, delay or defraud a creditor or an officer of the estate charged

22  with custody of property . . . , has transferred, removed, destroyed, mutilated or concealed, or has

23  permitted to be transferred, removed, destroyed, mutilated or concealed, property of the debtor,

24  within one year before the date of the filing of the petition."  11 U.S.C. § 727(a)(2)(A).  For a

25  discharge to be denied under § 727(a)(2)(A), there must be (1) a disposition of property (i.e.,

26  transfer or concealment); (2) with subjective intent to hinder, delay or defraud a creditor; and (3)

27  it must occur within one year prior to filing bankruptcy.  Fogal Legware of Switzerland, Inc. v.

28

1  <u>Wills (In re Wills)</u>, 243 B.R. 58, 65 (9th Cir. BAP 1999).  Because the statute is written in the

2  disjunctive, an intent to hinder or delay is sufficient to deny discharge under § 727(a)(2).

3  <u>Bernard v. Sheaffer (In re Bernard)</u>, 96 F.3d 1279, 1281 (9th Cir. 1996).  Proof of fraud is not

4  necessary nor is injury to creditors relevant for purposes of § 727(a)(2).  <u>Id</u>. at 1281-82.

5        ACIC points out that Debtor valued "Misc. Household Goods and Furniture" in Schedule

6  B(4) at $1,800 and "Jewelry" in Schedule B(7) at $500 while Nazari valued the same items in

7  her schedules filed seven days later at $1,600 and $1,100, respectively.  ACIC also notes that

8  Debtor disclosed in Schedule B(5) "Books, photos and a camera" valued at $1,000 while Nazari

9  responded "None" to the same question in her schedules.  Based on these inconsistencies, ACIC

10  seeks a finding that Debtor's statements are false, that Debtor undervalued his community

11  interest in jewelry on the petition date by at least $600, and that "Debtor, with the intent to

12  hinder, delay, or defraud his creditors or the Trustee, transferred, removed, destroyed, mutilated,

13  or concealed property, or has permitted the same to occur within one year before the Petition

14  Date."[3]

15        In making its comparison, ACIC assumes that the statements contained in Nazari's

16  schedules are true.[4]  Even assuming the veracity of her schedules, the disclosures in Nazari's

17  schedules do not necessarily make the Debtor's responses in Schedule B false.  More

18  importantly, there was no evidence at trial establishing that the Debtor owned on the petition date

19  an interest in any specific personal property that was not disclosed in his schedules or that the

20

21  [3]  Plaintiff's Trial Brief in Support of Complaint Objecting to Discharge Pursuant to 11 U.S.C. §
727(a)(2), (a)(3), (a)(4), (a)(5) and (a)(6) ("ACIC's Trial Brief"), 9:19-21.

22

23  [4]  ACIC never challenged Nazari's right to a discharge.  It asks the court to accept Nazari's
schedules and statements as true and her husband's as false.  Yet ACIC's own evidence tends to

24  undermine Nazari's credibility.  For example, ACIC's Exhibit 49-8 is a check from Encore
Services, Inc. Public Works payable to Nazari in the amount of $2,000 dated April 15, 2013.

25  When asked about Encore Services, Inc., Nazari testified that she "had no idea what it is."
ACIC's Exhibit 49-17 is a check from John G. Cataldo, A.I.A.C.S.I payable to Nazari and

26  Consulting Engineers & Land Surveyors in the amount of $3,500 dated May 13, 2013.  Nazari

27  denied knowing anything about Consulting Engineers and Land Surveyors as well.

28

value of any personal property so disclosed was understated.  In response to ACIC's claim that

Debtor undervalued jewelry on the petition date, Nazari testified that she and the Debtor did not

own any precious stones between 2006 and 2012.  She testified that the only jewelry that she

owned between 2006 and 2012 was her gold band wedding ring and a few bracelets, and that she

never owned jewelry of a value in excess of $1,000.  With respect to ACIC's claim that the

Debtor owned antique rugs on the petition date, Nazari and the Debtor admitted owning two 8' X

11' rugs and a 3' X 6' rug on the petition date that had been wedding gifts from in-laws, but

denied that any of the rugs were either antique or valuable.  There was no admissible evidence to

the contrary.

B.  Section 727(a)(2)(B)

Section 727(a)(2)(B) authorizes a denial of discharge upon proof that the Debtor has

concealed property of the estate after the filing of the petition with the intent to hinder, delay or

defraud a creditor or an officer of the estate.  11 U.S.C. § 727(a)(2)(B).  ACIC asserts that the

Debtor's discharge should be denied pursuant to § 727(a)(2)(B) because the Debtor and Nazari

sold a 2003 Toyota Corolla on April 17, 2013, concealed the sale of the vehicle from the trustee,

and failed to turn over $2,500 in non-exempt proceeds from the sale to the trustee.

On the petition date, Debtor disclosed in Schedule B(25) his interest in a 2003 Toyota

Corolla valued at $2,000.  In Schedule C, Debtor claimed an exemption in the vehicle of $2,000.

After the Debtor was examined regarding his assets at the meeting of creditors, the trustee filed a

no asset report on January 10, 2013, in which he certified that:  "I have made a diligent inquiry

into the financial affairs of the debtor(s) and the location of property belonging to the estate; and

that there is no property available for distribution from the estate over and above that exempted

by law . . . [and] that the estate . . . has been fully administered."

Nazari owned an interest in the 2003 Toyota Corolla as well.  In her bankruptcy case,

Nazari disclosed in Schedule B(25) her interest in the 2003 Toyota Corolla, valued the vehicle at

$2,000, and exempted her interest in Schedule C.  By March 28, 2013, the trustee in Nazari's

bankruptcy case had filed a no-asset report, Nazari had received a discharge, Nazari's

bankruptcy case was closed, and the estate's interest in the 2003 Toyota Corolla was abandoned to Nazari pursuant to § 554(c).  In the Debtor's case, however, ACIC's complaint filed on March 18, 2013, prevented not only entry of the Debtor's discharge, but a closing of the Debtor's case and abandonment of the estate's interest in the vehicle under § 554(c).

Nazari testified that she and the Debtor sold the 2003 Toyota Corolla to pay bills.  Debtor should have sought an abandonment under § 554(a) of the estate's community interest in the 2003 Toyota Corolla prior to the sale of the vehicle.  However, the fact that the Debtor did not seek such abandonment in his case does not, of and by itself, establish that Debtor sold the vehicle with the subjective intent to hinder, delay or defraud the trustee or creditors of the estate, particularly given the circumstances of the case.

C.  Section 727(a)(4)

Section 727(a)(4) authorizes the court to deny a chapter 7 discharge to a debtor who "knowingly and fraudulently" makes a false oath in or in connection with the case.  "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations."  Wills, 243 B.R. at 63.  To prevail under § 727(a)(4)(A), the plaintiff must show: (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly, and (4) the oath was made fraudulently.  Id., at 62; Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005).  A debtor "acts knowingly if he or she acts deliberately or consciously."  Roberts, 331 B.R. at 883.   A debtor's fraudulent intent may be established by circumstantial evidence or by inferences drawn from the debtor's course of conduct.  In re Devers, 759 F.2d 751, 753-54 (9th Cir. 1985); Stanley v. Hoblitzell (In re Hoblitzell), 223 B.R. 211, 215 (Bankr. E.D. Cal. 1998).

Debtors have an absolute duty to file complete and accurate schedules.  See Cusano v. Klein, 264 F.3d 936, 946 (9th Cir. 2001).  A false oath may involve a false statement or omission in the debtor's schedules.  Wills, 243 B.R. at 62.  To be actionable under § 727(a)(4), the false statement or omission in schedules or statements must be material.  Id. at 62 ("A false statement

8

is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.").

> A false statement or omission that has no impact on a bankruptcy case is not grounds for denial of a discharge under § 727(a)(4)(A). As a result, omissions or misstatements relating to assets having little or no value may be considered immaterial. Likewise, omissions or misstatements concerning property that would not be property of the estate may not meet the materiality requirement of § 727(a)(4)(A). However, an omission or misstatement relating to an asset that is of little value or that would not be property of the estate is material if the omission or misstatement detrimentally affects the administration of the estate.

Id. at 63 (citations omitted). Errors and omissions in a debtor's schedules and statements may be corrected by amendment. Debtors have the right to amend their petition, lists, schedules and statements as a matter of course at any time until the case is closed. FRBP 1009(a).

Furthermore, "[a] discharge cannot be denied when items are omitted by honest mistake." Lee, 309 B.R. at 477. "However, the existence of more than one falsehood, together with the debtor's failure to take advantage of the opportunity to clear up all inconsistencies and omissions, such as when filing amended schedules, can be found to constitute reckless indifference to the truth satisfying the requisite intent to deceive." Id.; see Wills, 243 B.R. at 64 ("A court may find the requisite intent where there has been a pattern of falsity or from a debtor's reckless indifference to or disregard of the truth.").

ACIC asserts that Debtor's discharge should be denied under § 727(a)(4) because "the Debtor failed to disclose his bank accounts with CitiBank and JP Morgan Chase, his business dealings for at least three (3) different companies that he was involved in and/or operated, his assets, his income, and his liabilities."[5] In its trial brief, ACIC itemizes 18 statements or omissions made by the Debtor under oath in his original schedules and statements which ACIC alleges were false, material, and made by the Debtor knowingly and fraudulently.[6]

---

[5] ACIC's Trial Brief, 16:16-20.

[6] Id. at 18-20.

With respect to the issue of materiality, the court notes that many of the statements or omissions itemized by ACIC relate to assets that either have little or no value or would not be property of the estate.  For example:

1. Bank Accounts.  The checking and savings accounts formerly held by the Debtor at CitiBank were levied upon by ACIC on September 13, 2012, and closed prior to bankruptcy with a zero balance in each account on the closing date.

2. 2011 Honda Civic.  This vehicle was leased by Nazari.  Debtor did not have an interest in this vehicle on the petition date.

3. Tidy Remodelers, Inc.  This corporation was formed on August 23, 2007, for the purpose of engaging in the construction business.  Debtor testified that Tidy Remodelers, Inc. did not commence doing business, had no bank account, and was "closed" in 2009.  There was no evidence to the contrary.

4. HFP Development, LLC.  This limited liability company was formed on August 23, 2007.  Debtor testified that  HFP Development, LLC did not commence doing business, had no bank account, and was "closed" in 2009.  There was no evidence to the contrary.

5. Allied  ACIC's witness, Fred Zohrehvand testified that he formed Allied in 2011 after using the name Pivot Construction Group in an attempt to capitalize on the "Pivot" name after Debtor's business failed in August 2010.  Zohrehvand testified that he owned Allied and that Debtor ran Allied.  Allied did not have any employees nor did it hire independent contractors.  Debtor was not considered an employee nor was he paid as an employee, but he was in charge of operations including the payment of bills. Debtor testified that he worked with Allied in an attempt to keep his contractor's license current after Pivot failed and ACIC commenced the state court action.  Allied's only job, according to Zohrehvand, was a landscaping contract referred by a friend in which the company made about $6,000.  Allied ceased doing business in November 2011.  Nazari testified that she was not aware of any business

operated by the Debtor between 2006 and 2012, other than Pivot, Tidy Remodelers, Inc., and HFP Development, LLC.

6. <u>Child Support</u>   In his Schedule J filed on December 10, 2012, Debtor listed child support of $1,376 per month which was consistent with the stipulation contained in the Judgment later entered in the Dissolution Action on May 24, 2013.  On December 10, 2012, Debtor amended Schedule J to delete the $1,376 in child support as an expense.  Debtor had lost his job as a Principal Engineer with the City of Glendale on July 30, 2012.  Nazari testified that the Debtor had agreed to pay child support in December 2012, but never actually paid child support to her during their separation.  Nazari's testimony is consistent with the Schedule I filed in her bankruptcy case on December 17, 2012, and her response to the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, Question 8, filed in her case.

7. <u>Capital Gain of $8,228</u>   ACIC's witness, Anthony Torosian, a certified public accountant who prepared Debtor's state and federal income tax returns for 2011, testified that Debtor reported adjusted gross income in 2011 of $4,903, which included:  (1) $96,267 in wages, salaries and tips; (2) $8,228 representing a capital gain by Pivot derived from the sale of a Freightliner truck on August 31, 2011; (3) $3,000 in capital losses; (4) $578 in passive income; and (5) a net operating loss of $97,170.  Debtor accurately disclosed in his amended statement of financial affairs filed on December 13, 2012, the sum of $97,267 in wages, salaries and tips earned in 2011 and reported on his state and federal income tax returns.  He did not include in his statement of financial affairs Pivot's $8,228 capital gain nor, for that matter, the $3,000 capital loss sustained in the year prior to bankruptcy.

The court listened to conflicting testimony regarding (1) whether the Debtor resided at the Harmony Property or the property owned by his in-laws at 11019 Whitegate Avenue, Sunland, CA ("Whitegate Property"); (2) the length of time the Debtor resided at the Whitegate Property; (3) whether the Whitegate Property had a "back unit;" (4) whether Debtor paid rent and/or

utilities while he resided at the Whitegate Property; (5) whether the Debtor purchased groceries while residing at the Whitegate Property; (6) whether there was a designated place for the Debtor to store his groceries and cook his food while residing at the Whitegate Property; (7) whether the Debtor had furniture while residing at the Whitegate Property; (8) whether the in-laws loaned Debtor any money while residing at the Whitegate Property; and (9) what model vehicle the Debtor drove while residing at the Whitegate Property.

The court has not uncovered any case in which a discharge was denied due to a debtor's misstatement of his daughter's age. There is simply little evidence to support a finding that any of the statements or omissions identified by ACIC detrimentally affected the administration of the bankruptcy estate, or adversely affected the trustee's ability to discover other assets or to fully investigate the debtor's financial condition.

Even if the court could find that one or more of the statements or omissions identified by ACIC were material and further, that the Debtor made the statement or omission knowingly, the evidence does not support a finding that the Debtor had the subjective intent to defraud the trustee or creditors at the time the statements or omissions were made. While the court might infer intent to defraud from the existence of more than one false statement or omission, Debtor has taken advantage of the opportunity to clear up inconsistencies and omissions by amendments to his schedules and statements. Finally, the Debtor's schedules and statements, as amended, are consistent with the testimony and evidence admitted at trial regarding the Debtor's financial condition on the date of bankruptcy.

D. Section 727(a)(3) & (6)

Section 727(a)(3) authorizes the court to deny a chapter 7 discharge to a debtor who "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure was justified under all of the circumstances of the case." "[T]he purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs." In re Caneva, 550 F.3d 755, 761 (9th Cir.

2008).  The debtor must "present sufficient written evidence which will enable his creditors reasonably to ascertain his present condition and to follow his business transactions for a reasonable period in the past."  Id. (citation omitted).    Under § 727(a)(3), the plaintiff must first establish that "'(1) the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.'"  Id. (citation omitted).  After showing inadequate or nonexistent records, 'the burden then shifts to the debtor to justify the inadequacy or nonexistence of the records.'"  Id. (citation omitted).  "The bankruptcy court has wide discretion in both inquiries."  Lee, 309 B.R. at 478.

ACIC's § 727(a)(3) and (6) claim is largely predicated on the Debtor's alleged failure to produce documents pursuant to a Stipulation for Examination and Production of Documents under Bankruptcy Rule 2004 dated February 14, 2013 ("Stipulation").[7]  The Stipulation was approved by the court on February 15, 2013.[8]  Debtor appeared for the Rule 2004 examination pursuant to the Stipulation, but allegedly failed to produce at the examination all documents in response to ACIC's request contained in the Stipulation.  Notwithstanding this disagreement, ACIC concluded its examination of the Debtor under Rule 2004 on February 25, 2013, without seeking an order from the court compelling the Debtor to produce the specific documents that were allegedly not produced at the examination.[9]

---

[7]  Id. at 13-15.

[8]  LBR 9071-1(a)(2) states that "[a] written stipulation entered into pursuant to these rules must be filed with the court, but it will not be effective until a separate order thereon is entered.  LBR 9071-1(a)(3) further states that "[a]n order on a stipulation must be prepared and lodged in accordance with LBR 9021-1(b)(2)."

[9]  ACIC commenced this adversary proceeding one month after concluding the Debtor's Rule 2004 examination and then engaged in discovery.  It appears that Debtor complied with ACIC's discovery initiatives directed at the Debtor.  ACIC served the Debtor with interrogatories and a request for admissions to which the Debtor responded.  It was not necessary for ACIC to seek relief under F.R.Civ.P. 37, as incorporated into FRBP 7037.

1    Debtor essentially claims that he produced all documents responsive to the request

2    embodied in the Stipulation that were in his possession, custody or control.  ACIC disagrees,

3    stating that the Debtor's "failure to keep and preserve basic records such as bank statements . . .

4    betrays a deliberate attempt to hinder and delay the trustee in his efforts to investigate the

5    Debtor's financial affairs."[10]  However, there is no evidence that the Debtor failed to cooperate

6    with the trustee in his investigation of the Debtor's financial condition or that Debtor's alleged

7    failure to produce all documents pursuant to the Stipulation hindered or delayed the trustee's

8    administration of the estate.  ACIC did not subpoena the trustee as a witness nor did he testify at

9    trial.  As previously stated, the Debtor appeared as his meeting of creditors and submitted to

10   examination under oath by the trustee.  After concluding the creditors' meeting, the trustee filed

11   a no-asset report certifying that he had made "a diligent inquiry into the financial affairs of the

12   debtor(s) and the location of the property belonging to the estate . . . ."  Based on the Chapter 7

13   Trustee's Report of No Distribution, the court cannot find either (1) that the Debtor failed to

14   maintain or preserve books and records; or (2) that it was impossible from the books and records

15   maintained by the Debtor to ascertain the Debtor's financial condition and material business

16   transactions.

17   Furthermore, there is no basis to deny the Debtor's discharge under § 727(a)(6).  ACIC

18   never brought the dispute regarding the Debtor's alleged failure to produce requested documents

19   to the attention of the court prior to filing its complaint in this adversary proceeding.  If ACIC

20   had done so, the court would have had the opportunity, after notice and a hearing, to determine

21   whether the specific documents not produced were (1) within the scope of the request; (2) in the

22   Debtor's possession, custody or control; and (3) withheld by the Debtor from production without

23   justification.  If the court had ordered Debtor to produce the specific documents after making

24   such an inquiry and the Debtor had refused to do so, then the Debtor's discharge would be at risk

25   under § 727(a)(6).  But this was not done.  There is no evidence that Debtor refused in the case to

26

27   ───────────────
     [10]  ACIC's Trial Brief, 15:1-6.

28

1   obey any lawful order of the court, other than an order to respond to a material question or to

2   testify, within the scope of § 727(a)(6).

3          E.   Section 727(a)(5)

4          Section 727(a)(5) authorizes the court to deny a chapter 7 discharge to a debtor who "has

5   failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or

6   deficiency of assets to meet the debtor's liabilities."  Under § 727(a)(5), the initial burden of

7   going forward is on the objecting party who must introduce some evidence of (a) a

8   disappearance of substantial assets or of an unusual transaction; (b) a request that the debtor

9   explain such disappearance or unusual transaction; and (c) a failure of the debtor to respond

10  satisfactorily to the inquiry.  In re Duncan, 123 B.R. 383, 388 (Bankr. C.D. Cal. 1991).  In other

11  words, "[t]he creditor must prove which assets are missing to make a prima facie case."  Lee,

12  309 B.R. at 478.  The burden then shifts to the debtor to satisfactorily explain what happened.

13  Duncan, 123 B.R. at 388.

14         ACIC does not identify in its trial brief the disappearance of substantial assets or even

15  specific missing assets, but simply states that it "will prove at trial that the Debtor has failed to

16  explain the disposition of certain personal property assets that he previously stated to [ACIC]

17  were in his possession."[11]  ACIC did not identify during trial or in closing argument a specific

18  missing asset for which the Debtor was unable to account.  The evidence adduced at trial fell

19  short of establishing a prima facie case for a denial of discharge under § 727(a)(5).  As

20  previously stated, Debtor's schedules and statements, as amended, are consistent with the

21  testimony and evidence admitted at trial regarding the Debtor's financial condition on the date of

22  bankruptcy.

23         ACIC does not suggest that it was defrauded by Debtor when it posted the construction

24  bonds for Pivot and accepted Debtor's personal guaranty.  The testimony at trial indicated that

25  the Debtor was simply trying to survive financially after his construction company failed, his

26  marriage faltered, and his job was lost at the City of Glendale.  The record is insufficient to

27  ─────────────────
    [11] Id. at 21:22-24.

28

15

support a finding that the Debtor sought to hinder, delay or defraud the trustee or creditors of the estate, either before or after the petition date, or otherwise engaged in conduct warranting a denial of discharge.

### III. CONCLUSION

For the reasons stated, ACIC has failed to establish that a discharge should be denied the Debtor under §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4), (a)(5) or (a)(6).  A separate judgment will be entered consistent with this memorandum decision.

### ###

Date: May 9, 2014

Peter H. Carroll
United States Bankruptcy Judge